# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD MIGYANKO, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br>v.<br>AIMBRIDGE HOSPITALITY, LLC,<br><br>   Defendant. | Case No. 2:20-cv-01095-NR |

### STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

  The United States respectfully submits this Statement of Interest under 28 U.S.C. § 517[1] to address an important issue that Defendant has raised in its motion to dismiss. Specifically, this Statement of Interest addresses the interplay between the general nondiscrimination requirements of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, and the ADA Standards for Accessible Design ("ADA Standards"), which the U.S. Department of Justice ("Department") promulgated as part of its Title III regulations in 1991 and 2010. *See* 28 C.F.R. §§ 36.102; 36.304(d), and Subpart D. Congress charged the Department with implementing Title III of the ADA by promulgating regulations, issuing technical assistance, and bringing suits in federal court to enforce the statute. 42 U.S.C. §§ 12186(b)-(c), 12188(b), 12206. The Department thus has a strong interest in the proper interpretation of Title III and its implementing regulations, including the accessibility standards.

---

[1] The Attorney General is authorized "to attend to the interests of the United States" in any case pending in federal court. 28 U.S.C. § 517.

1

I.  **<u>INTRODUCTION</u>**

Plaintiff, on behalf of a proposed class of individuals with disabilities who use wheelchairs or other mobility devices, alleges that Defendant, Aimbridge Hospitality, has violated Title III of the ADA, 42 U.S.C. §§ 12181-12189, by denying equal access to its hotel rooms.  *See* Second Am. Compl., Dkt. No. 44.  Specifically, Plaintiff alleges that many of Aimbridge's hotel rooms have beds that are too high for guests with disabilities to transfer onto from a wheelchair.  *See id.*  Plaintiff explains that it can be virtually impossible for a wheelchair user to independently transfer from a wheelchair onto the bed surface because of the difference in height of a typical wheelchair (18-20 inches) and that of increasingly high hotel bed surfaces (25-30 inches or higher).  *Id.* at ¶ 6.

Aimbridge argues that because its hotel rooms comply with the ADA Standards, Plaintiff's general allegation of unequal access fails to state a claim under the ADA.  *See* Mot. to Dismiss, Dkt. No. 46, at 11-13.  More specifically, Aimbridge states that because the ADA Standards do not address the height of hotel beds, Aimbridge has no ADA obligation to provide Plaintiff with a lower bed.  *See id.*

The United States respectfully submits this Statement of Interest to clarify the application of the ADA where the alleged barrier does not implicate, and is not addressed by, a specific provision of the ADA Standards.  In such cases, a public accommodation's obligations are governed by the ADA's general nondiscrimination provisions, including the requirement to make reasonable modifications where necessary to provide the public accommodation's goods and services to people with disabilities.  42 U.S.C. § 12182(b)(2)(A)(ii).

Here, the parties agree that the ADA Standards do not address or impose specific requirements for hotel bed height.  But contrary to Defendant's assertion, this is not the end of

2

the analysis. Rather, it is just the first step. Indeed, the Department discussed this very issue in an appendix published with its 2010 revisions to the ADA regulations, explaining that hotels may need to make reasonable modifications to ensure that their beds are usable by people with disabilities. *See* 28 C.F.R. § 36, App. A, at 884 (2020).

**II.      STATUTORY AND REGULATORY AUTHORITY**

The ADA contains general nondiscrimination requirements for public accommodations, including hotels, 42 U.S.C. §§ 12181-12189, which are fleshed out in regulations promulgated by the Attorney General, as directed by Congress. *Id.* at § 12186(b). The ADA also directed the Attorney General to issue regulations establishing physical accessibility standards for facilities under Title III of the ADA. *Id.* at §§ 12186(b)-(c).

Under the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a). The ADA also prohibits a public accommodation from denying individuals with disabilities an equal opportunity to participate in or benefit from its goods and services. 42 U.S.C. § 12182(b)(1)(A)(i)-(ii); 28 C.F.R. §§ 36.202(a)-(b). And discrimination includes a failure to make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods and services to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods or services. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a). A public accommodation's reasonable modification obligation may include making changes to the usual ways of doing things to remove barriers that make it difficult or impossible for people with disabilities to access goods and services.

The ADA regulations on physical accessibility standards detail how places of public accommodation are "to be designed, constructed, and altered in compliance with the accessibility standards" set out in the regulations.  28 C.F.R. § 36.101(a).  Issued with the Title III regulation, the ADA Standards set out the relevant standards for ADA compliance as to the physical accessibility of certain architectural elements.  *See* 42 U.S.C. §§ 12183, 12186; 28 C.F.R. §§ 36.102; 36.304(d), and Subpart D.  The ADA Standards must be consistent with the minimum guidelines and requirements of the Architectural and Transportation Barriers Compliance Board, now known as the Access Board.  42 U.S.C. §§ 12186(b)-(c).  The ADA Standards include both the 1991 Standards and 2010 Standards.[2]

The ADA Standards do not address every aspect of physical accessibility.  And where the ADA Standards are applicable, public accommodations' obligations may differ depending on whether they are altering an existing building, building a new facility, or removing architectural barriers that have existed for years.

## III.   DISCUSSION

This case implicates the appropriate legal framework for analyzing public accommodations' obligations to provide people with disabilties access to goods and services where the alleged barrier is not specifically addressed by the ADA Standards.  In such a case, the law is clear.  Where the Department has not issued specific design or technical standards, public accommodations' actions are governed by the ADA's general nondiscrimination requirements and the ADA's overarching equal access mandate.  These requirements include the obligation to

---

[2] The 1991 Standards are contained in Appendix D of the Title III regulation.  28 C.F.R. pt. 36, App. D.  The 1991 Standards are based on the Access Board's ADA Accessibility Guidelines (1991 ADAAG).  The Access Board updated its ADA Accessibility Guidelines in 2004 (2004 ADAAG).  *See* 36 C.F.R. pt. 1191.  The Department's 2010 Standards reflect that update.

4

make reasonable modifications where necessary to provide people with disabilities access to the public accommodation's goods and services.  Applying these principles, Aimbridge's obligations in this case are appropriately governed by the ADA's general provisions rather than the ADA Standards.

### A. The ADA's general nondiscrimination requirements apply in the absence of ADA Standards on hotel bed height.

As explained above, the ADA Standards do not and cannot address every conceivable disability impact in a physical space.[3]  As Defendant correctly points out, Section 806 of the ADA Standards addresses some aspects of physical accessibility in hotel rooms, including the need for clear floor space on both sides of a hotel bed so that guests who use wheelchairs can navigate throughout the room.  See Dkt. No. 46, at 10-11; 36 C.F.R. Pt. 1191, App. D, §§ 806.1-806.3.2.  Defendant concedes that the ADA Standards do not address hotel bed height.  Nor do the ADA Standards address any other design aspects of the bed itself.  But contrary to Defendant's assertion, this silence does not mean that, as a categorical matter, hotels have no obligation to provide beds that are usable by people with disabilities.  See Dkt. No. 46, at 11.

Rather, because the ADA Standards do not address hotel bed height, the next step in the analysis is to look to the ADA's general nondiscrimination requirements, including the obligation to make reasonable modifications.  The Department directly addressed the application of the ADA's reasonable modification requirement to hotel bed height in an appendix published

---

[3] Of course, where the ADA Standards specifically address an aspect of physical accessibility, compliance with that provision establishes compliance with the ADA.  For example, if an accessible hotel room contains a bathroom with grab bars that are between 33 and 36 inches high, where required by the ADA Standards, the hotel has met its ADA obligation as to that element.  See 36 C.F.R. Pt. 1191, App. D, §§ 607.4, 609.4.  Individuals with disabilities could not premise an ADA claim on an allegation that they need grab bars that are 30 inches high instead.

with the 2010 revisions to the ADA regulations.  As set out below, the Department declined at that time to include specific regulations on bed height in hotel rooms.  But it does not follow, as Defendant claims, that the Department affirmatively decided that bed height is exempt from ADA enforcement actions.  *See id.* at 11-12.  In fact, the Department made clear that hotels have ADA obligations to guests with disabilities who cannot access the hotels' beds:

> Additionally, many commenters urged the Department to regulate the height of beds in accessible hotel guest rooms . . . These commenters noted that in recent years, hotel beds have become higher as hotels use thicker mattresses, thereby making it difficult or impossible for many individuals who use wheelchairs to transfer onto hotel beds. . . . For the present, the Department reminds covered entities that they have the obligation to undertake reasonable modifications to their current policies and procedures . . . to make their facilities accessible to persons with disabilities.  In many cases . . . adjusting hotel bed height may be necessary to comply with those requirements. . . . The Department has decided not to add specific scoping or technical requirements for equipment and furniture in this final rule.  Other provisions of the regulation, including those requiring reasonable modifications of policies, practices, or procedures . . . will require the provision of accessible equipment in appropriate circumstances.

*See* 28 C.F.R. pt. 36, App. A, at 884 (2020).

Federal courts have applied this principle in other contexts to find ADA violations in the absence of specific design or technical standards.  *See, e.g.*, *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 184-85 (9th Cir. 2004) (rejecting theater's argument that plaintiff cannot state a claim without establishing that wheelchair seating violated the ADA Standards); *Kalani v. Starbucks Corporation*, 117 F. Supp. 3d 1078 (E.D. Cal. 2015), *aff'd in relevant part, vacated in part*, 698 Fed. Appx. 883, 886-887 (9th Cir. 2017).[4]

---

[4] *See also, e.g.*, *Fortune v. City of Lomita*, 766 F.3d 1098, 1106 (9th Cir. 2014) (holding that the ADA requires local governments to provide accessible on-street parking "irrespective of whether the DOJ has adopted technical specifications"); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 549 (E.D.N.Y. 2018) ("DOJ regulations may amplify or augment the ADA's general mandate.  The absence of those regulations does not displace the affirmative obligation created by the statute.") (collecting website accessibility cases).

6

The decision in *Kalani* is particularly illustrative on how this interplay works. In that case, the plaintiff, who uses a wheelchair, alleged that Starbucks arranged its interior accessible tables in such a way that he had no choice but to sit facing a wall, with his back to the store's interior. Mr. Kalani argued that Starbucks' actions denied him full and equal enjoyment of the store's goods and services in that, unlike people without disabilities, he could not participate in the community coffee shop "experience" that was part of the Starbucks brand. Starbucks argued that its interior seating did not violate any regulations set out in the ADA Standards, which did not address placement of interior accessible tables, and thus did not violate the ADA as a matter of law. *Id.* at 1080-81. The district court sided with the plaintiff, holding that he could state an ADA claim without showing that the orientation of the tables violated the ADA Standards and, instead, could rely on the ADA's general antidiscrimination provisions. *Id.* at 1084-86. The court then concluded that Starbucks had violated those general provisions by failing to orient the tables so that Mr. Kalani could equally enjoy the store. *Id.* at 1090. The Ninth Circuit Court of Appeals affirmed the district court's finding that Starbucks' placement of its interior accessible tables violated the ADA's general nondiscrimination mandate. 698 Fed. Appx. 883, 886-887 (9th Cir. 2017) ("The ADA requires public accommodations to take reasonable steps to provide an experience comparable to that afforded to non-disabled patrons.").

The Department also addressed this principle in a Statement of Interest filed in *New v. Lucky Brand Dungarees Stores, Inc.*, where the Department explained that the ADA Standards establish only one component of a public accommodation's obligations under the ADA. *See* 14-cv-20574 (S.D. Fla. 2014), Dkt. No. 19. In *Lucky Brand*, the defendant argued that point-of-sale ("POS") devices used by customers to swipe a debit or credit card do not need to be accessible to blind individuals because no specific ADA Standards address them. *See id.* The Department

7

clarified that while the ADA Standards do not apply to POS devices, the ADA's general prohibition against disability discrimination and the requirement to provide effective communication apply. *See id.*

Defendant argues that *Lucky Brand* is inapplicable because, in that case, no ADA Standards applied to POS devices, whereas here the ADA Standards address many aspects of hotel rooms, and presumably the Department could have addressed hotel bed height. Dkt. No. 46, at 14-15. But this is a distinction without a legal difference. The relevant question is not whether the Department could have issued specific standards for hotel bed height, but rather whether the Department did, in fact, issue such standards. The Department has not, and thus the analysis turns to the statute's general nondiscrimination provisions.

In this same vein, Defendant's reliance on *Access Now, Inc. v. Blue Apron, LLC* is misplaced. *See* Dkt. No. 46, at 15 (citing No. 17-116, 2017 U.S. Dist. LEXIS 185112, *18 (D.N.H. Nov. 8, 2017)). *Blue Apron* holds that websites are covered by the ADA's general nondiscrimination requirements because no specific regulations address them. *See* 2017 U.S. Dist. LEXIS 185112, *18. In dicta, the court distinguished the website-based claim from one where the Department has issued specific regulations on point and a plaintiff seeks different or greater accessibility than the Department's controlling regulations require. *See id.*, *17-18. The court is correct that where controlling regulations apply, they establish the parameters for compliance. *See supra* at 5 n.3. But as is the case for websites, no specific regulations on hotel bed height exist.[5] *Blue Apron* thus is wholly consistent with and supports the proposition that

---

[5] Defendant asserts that the Department has promulgated controlling regulations for "hotel rooms and the sleeping surfaces contained therein." Dkt. No. 46, at 15. While the ADA Standards provide specific and controlling regulations for many elements or features of hotel rooms, including as noted above necessary clear floor space around the bed, the ADA Standards do not

8

where no relevant ADA regulations exist, the ADA's general nondiscrimination obligations apply. *See id.*

Other cases relied on by Defendant are also inapposite. Defendant selectively quotes from several California district court cases for the proposition that an ADA claim based on a physical barrier must allege noncompliance with the ADA Standards. *See* Dkt. No. 46, at 13. But these cases say nothing of the sort. Rather, they stand for the straightforward proposition that a plaintiff cannot use alleged violations of state law, and more specifically state building codes, to establish an ADA violation where the ADA Standards already address the alleged barrier. For example, in *Johnson v. Kohanbash Century Plaza, LLC*, the court found that a parking space did not violate the ADA Standards' requirement that the space be "clearly marked" just because the style and color of its markings did not meet the more specific requirements of the California Building Code. *See* No. 15-2484, 2019 U.S. Dist. LEXIS 131881, *13 (E.D. Cal. Aug. 6, 2019). Similarly, both *Wilson v. Pier 1 Imports (US), Inc.*, and *Eiden v. Home Depot USA, Inc.*, involved alleged violations of the ADA and the California Building Code, and, in each case, the district court held that the plaintiffs could not premise ADA liability on violations of the state building code's more specific requirements for the elements at issue. *See* 439 F. Supp. 2d 1054, 1066 (E.D. Cal. July 14, 2006); No. CIVS04-977 LKK/CMK, 2006 WL 1490418, at *8 (E.D. Cal. May 26, 2006). And in *White v. Divine Investments, Inc.*, the court of appeals discussed favorably the lower court's accordance on this same, narrow issue. *See* 286 Fed. Appx. 344, 346 (9th Cir. 2008). The Department agrees that a plaintiff cannot establish liability under the ADA, a federal law, by pointing to state building code violations

---

address any aspects of the "sleeping surfaces contained therein," *id.*—presumably the beds. Defendant offers no support for its assertion otherwise.

9

where those state codes require greater or different accessibility than required by the ADA Standards. But that aside, these cases simply do not address the issue before this Court as to the obligations a public accommodation has when no relevant provision of the ADA Standards exists.

> **B.  A hotel may need to make reasonable modifications to the hotel's beds for guests with disabilities.**

Guests cannot fully or equally use a hotel room if they cannot get onto the bed. Where an individual with a disability is unable to transfer from a wheelchair onto the hotel bed, the hotel may need to make reasonable modifications to accommodate the guest. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).[6] Of course, in the absence of specific requirements for bed height, hotels have some degree of flexibility in making reasonable modifications to provide usable beds for a person with a disability. This flexible standard is inherently fact-specific. For example, some hotels might be able to use a combination of lower profile mattresses, box springs, and bed frames to lower the beds permanently in some of their rooms. Or, some hotels could perhaps provide lower beds upon request in a room by using rollaway beds, removable bed frames, adjustable height bed frames, or bed frames on removable risers. Such flexibility could allow hotels to continue to use higher beds for guests that prefer them, if they so choose.

---

[6] The reasonable modification obligation typically involves an individualized analysis, and a public accommodation is not required to fundamentally alter the nature of its goods, services, or facilities in order to provide a reasonable modification. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a). Accordingly, most hotel operators likely would not be required, for example, to modify all of the beds in all of their rooms to ensure that a lower bed is always available for any guest who needs one because of a disability.

10

IV. **CONCLUSION**

The United States respectfully requests that the Court consider this Statement of Interest in this litigation.

For the United States of America:

/s/ Kristen Clarke
KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief


/s/ Stephanie M. Berger
KATHLEEN P. WOLFE
Special Litigation Counsel
KEVIN J. KIJEWSKI
Deputy Chief
STEPHANIE M. BERGER
Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street, N.E.
Washington, D.C. 20002
Telephone: 202-353-5101
Email: stephanie.berger@usdoj.gov